## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 31 2016, 8:16 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

William Perry McCall, III
Mosley Bertrand and McCall
Jeffersonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Pinnacle Properties Development Group, LLC, *Appellant-Plaintiff,* v. Christina Jackson and James Jackson, *Appellees-Defendants.* | August 31, 2016 Court of Appeals Case No. 10A04-1512-SC-2146 Appeal from the Clark Circuit Court The Honorable Kenneth R. Abbott, Magistrate Trial Court Cause No. 10C03-1508-SC-1325 |

**Kirsch, Judge.**

[1] Pinnacle Properties Development Group, LLC ("Pinnacle") appeals the small claims court's judgment that granted Pinnacle's claim for eviction against Christina and James Jackson ("the Jacksons"), but denied Pinnacle's claim for

damages. Pinnacle raises two issues that we consolidate and restate as: whether the small claims court's decision that the Jacksons did not owe Pinnacle damages for carpet removal or for two months of rent was contrary to law.

We affirm.

## Facts and Procedural History

The facts most favorable to the judgment are as follows. In September 2013, the Jacksons entered into a residential lease agreement ("the Lease") with Pinnacle for the lease of a home in Jeffersonville, Indiana.[1] The Jacksons agreed to pay $966.40 per month, which amount included monthly sewer and pet fees. *Pinnacle Ex.* 5.

As is relevant to this action, the Jacksons paid their July 2015 rent in full at the first of the month pursuant to the Lease. In the early morning hours of Sunday, July 12, the Jeffersonville area received significant rainfall, and the Jacksons' basement flooded, resulting in "four inches of water all through the bottom of the house." *Tr.* at 18. The Jacksons called Pinnacle's 24-hour emergency maintenance line but were not able to get through to speak to anyone. However, the Jacksons had the cell phone number of the leasing agent, so they contacted her. Based on their conversations with the leasing agent, the

---

[1] The record before us reflects that Pinnacle did not own the property, but, rather, served as a landlord for the property.

Jacksons began to pull up the carpet. Sometime during the day on Sunday, July 12, Ed Baker ("Baker"), a Pinnacle maintenance person, arrived at their home, and he told the Jacksons to put the furniture on bricks to get the items up out of the water, but Baker did not otherwise work on the flood situation or instruct them what to do or not to do. That day or the next, another Pinnacle maintenance person came to the Jacksons' home with a Rug Doctor to try to remove the water, but "[i]t wasn't doing any good. The water was so deep." *Id*. at 23.

[5] Ultimately, over the course of that Sunday and Monday, the Jacksons removed the carpet from the basement. *Id*. Thereafter, no one from Pinnacle came to assess or repair the paneling or dry wall in the Jacksons' basement, and Pinnacle did not replace the flooring in the basement. The Jacksons did not pay their August rent, and on August 19, Pinnacle filed a small claims eviction and damages action against Jackson "for failure to pay rent, sewer fees and damage to carpet." *Appellant's Br*. at 1.

[6] The small claims court conducted a trial of the matter in September 2015. Bob McEwen ("McEwen"), the Customer Service Director for Pinnacle, testified. He stated that, pursuant to the Jacksons' phone call to Pinnacle's "emergency pager" on Sunday July 12, McEwen dispatched Baker to the home and that Baker arrived that same day. *Tr*. at 8. McEwen testified that Pinnacle's standard operating procedure in the case of flooding at its properties is to pull back any wet carpet, extract the water, and blow the area dry, but that the Jacksons removed the carpet without Pinnacle's permission and contrary to the

terms of the Lease. McEwen testified that, pursuant to a quote that had been obtained by the homeowner, it was going to cost $1,374.57 to replace the carpet. McEwen was asked about the age of the Jacksons' basement carpet, but he did not know when it was installed, other than it was already in the home when he started working for Pinnacle two years prior.

[7] James Jackson ("James") testified that when the home flooded, they called the 24-hour service number, but "didn't get [any] answer," so they contacted the leasing agent. *Tr.* at 17. James explained that the leasing agent "got a hold of [McEwen]" and then she called the Jacksons back, telling them that McEwen told her that the Jacksons should "go ahead and remove the carpet" because it was not salvageable "and if we didn't[,] it was going to destroy the rest of the house." *Id.* James agreed that Baker arrived at some point on Sunday, "But . . . the only thing he showed up to do was to tell me that [McEwen] told him to go get bricks and put my furniture up on bricks[.]" *Id.* at 28.

[8] Although Pinnacle told the Jacksons that the carpet would be replaced, no replacement flooring was put into the home. James explained, "They were debating on what type of flooring to put in the basement. . . . [I]t went on and on, the next thing I know I receive eviction papers." *Id.* at 21. James stated that Pinnacle also did not address issues with buckling dry wall or paneling. Living in the home at the time period in question was James, his wife, a sixteen-year-old daughter, and a 16-month-old grandchild. Due to the lower level's condition, they "moved everything" from the lower level and were living upstairs. *Id.*

[9]     With regard to Pinnacle's request for eviction, James testified that he and his family were willing to move from the residence, and intended to do so, but their next residence was not available for at least two weeks from the date of trial, September 15, 2015. With regard to Pinnacle's claim for unpaid rent, James asked the small claims court to find that his July rent, which had been paid in full, should be applied to cover both July and August rent. James referred the court to a provision in the Lease stating that if any part of the house is uninhabitable by an act of God, then the rent should be pro-rated, proposing that because the Jacksons could not use the lower level of the home from July 12 to the date of trial in September, their rent should be reduced by fifty-percent for July and August.[2] James stated that the Jacksons offered to pay Pinnacle half of their September rent, under the same reasoning, but Pinnacle refused the offer.

[10]    With regard to Pinnacle's request for damages for removal of the carpet, James testified, "I don't understand how they can say that I owe for the carpet when

_____

[2] It appears that James was referring to paragraph 9(D) of the Lease, which states, in part:

> [I]f the Leased Premises is damaged by flood . . . or other destructive act of God such that the Leased Premises is uninhabitable for any length of time, Landlord shall have ninety (90) days from receipt of notice from Tenant within which to repair and restore the Leased Premises without terminating this lease[.] . . . If a part of the Leased Premises shall be damaged as mentioned above, but not so as to render the entire Leased Premises uninhabitable, the Monthly Rent shall abate in proportion to that part of the Leased Premises which is uninhabitable.

_Pinnacle Ex._ 5.

they're the ones that told me to remove the carpet," and "I wouldn't have done that if I hadn't [] been instructed." *Id*. at 19-20. He reiterated,

> [N]ow it's like they've turned the tables on me and saying that I wasn't told to remove the carpet, in which I was. I wouldn't have took that upon myself as a renter to rip up all the carpet downstairs. I was trying to save their property and save my home. I liked where I live.

*Id*. at 30. James testified that, after the flood, he received emails from McEwen concerning McEwen's communications with the homeowner about the flooding and the carpet removal. As for the age and condition of the carpet, James said it was "old" and "matted down" when the Jacksons had moved into the home two years prior, in September 2013. *Id*. at 26. James described that he and those helping him with the carpet removal "had to scrape [] parts of the padding up . . . it had been wore down so bad." *Id*.

[11] The small claims court took the matter under advisement, issuing a Judgment and Writ of possession a week later that granted possession of the residence to Pinnacle on September 30, 2015, but denied Pinnacle's request for damages from the Jacksons. Pinnacle filed a motion to correct error, and the small claims court issued an order denying Pinnacle's motion. Pinnacle now appeals.

## Discussion and Decision

[12] Pinnacle claims that the trial court committed reversible error when it denied its claims for unpaid rent for August and September and for damages stemming from the carpet removal. It is well settled that trial of a small claims action

shall be informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law. *LTL Truck Serv., LLC v. Safeguard, Inc.*, 817 N.E.2d 664, 668 (Ind. Ct. App. 2004). Nevertheless, the parties in a small claims court bear the same burdens of proof as they would in a regular civil action on the same issues. *Id*. In this case, Pinnacle had the burden of proof on each of its claims. Because the small claims court's decision with regard to damages for unpaid rent and carpet removal was not in Pinnacle's favor, Pinnacle is appealing from a negative judgment. On appeal, we will not reverse a negative judgment unless it is contrary to law. *Id*. at 667. To determine whether the judgment is contrary to law, we consider the evidence in the light most favorable to the appellee, together with all the reasonable inferences to be drawn therefrom. *Id*. A judgment will be reversed only if the evidence leads to but one conclusion and the trial court reached the opposite conclusion. *Id*.

[13] As a preliminary matter, we observe that the Jacksons did not file an appellees' brief. Where an appellee fails to file a brief, we do not undertake to develop arguments on that party's behalf; rather, we may reverse upon a prima facie showing of reversible error. *Morton v. Ivacic*, 898 N.E.2d 1196, 1199 (Ind. 2008). Prima facie error is error "at first sight, on first appearance, or on the face [of] it." *Id*.

[14] We also observe that Pinnacle has not filed an appellate appendix. Indiana Appellate Rule 49(A) states that "[t]he appellant *shall* file its Appendix on or before the date on which the appellant's brief is filed." (Emphasis added.)

Indiana Appellate Rule 50(A)(1) reads, "The purpose of an Appendix in civil appeals . . . is to present the Court with copies of only those parts of the Record on Appeal that are necessary for the Court to decide the issues presented."  In addition to the chronological case summary, appealed order, pleadings, and various other documents, Appellate Rule 50(A)(2) requires that the appendix include "other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal[.]"  Failure to file an appendix could result in dismissal.  *Yoquelet v. Marshall Cnty.*, 811 N.E.2d 826, 830 n.5 (Ind. Ct. App. 2004) (citing *Hughes v. King*, 808 N.E.2d 146, 148 (Ind. Ct. App. 2004)).  However, at least in the context of criminal cases, "[T]he failure to file an Appendix is not necessarily automatic cause for dismissal." *Johnson v. State*, 756 N.E.2d 965, 967 (Ind. 2001).  Here, although the record before us does not include Pinnacle's complaint or chronological case summary, among other things, we do have in the record before us the Lease and the small claims court's original judgment, as well as its order denying Pinnacle's motion to correct error.  Pinnacle also submitted the transcript of the small claims court hearing.  Therefore, we will address the merits of Pinnacle's appeal.

[15]   Pinnacle contends that the small claims court erred by not finding that the Jacksons breached the Lease by (1) failing to pay rent in August and September, and (2) removing the carpet.  With regard to the rent, Pinnacle's position is that the Lease clearly provided that the Jacksons owed $996.40 at the beginning of each month, their nonpayment constituted breach of the Lease, and that no

provision of the Lease excused their nonpayment. With regard to damages for the carpet removal, Pinnacle asserts that the small claims court erred by not requiring the Jacksons to pay $1,347.57 in damages for removing the carpet, which amount constituted the cost to replace it pursuant to a quote obtained by the property's owner.

[16]     As concerns the carpet, Pinnacle argues that the terms of the Lease did not permit any alterations, additions, or changes upon any part of the leased premises without first obtaining written consent from Pinnacle and that the Jacksons did not receive such prior authorization.[3] Pinnacle asserts that the Jacksons' removal of the carpet was "in direct conflict" with its standard protocol for handling flooded flooring, and the Jacksons, having removed the carpet without authorization, became responsible under the terms of the Lease for replacement costs.[4] *Appellant's Br.* at 7.

---

[3] Pinnacle refers to Paragraph 9(A) of the Lease, which provides, in part: "Occupants shall not cause or permit any alternations, additions, or changes of or upon any part of the Leased Premises without first obtaining the express written consent of Landlord." *Pinnacle Ex.* 5.

[4] We note that, in support of its argument that the Jacksons are responsible for the costs to replace the carpet, Pinnacle also cites to Paragraph 15(B) of the Lease. *Appellant's Br.* at 7. Paragraph 15 concerns Tenant's agreement to return possession of the Leased Premises in good and clean condition and in the same condition as it was received by Tenant, except for normal and reasonable wear and tear. Subsection (B) of Paragraph 15 provides: "[I]f any part of a finished flooring or carpet in a room must be replaced to satisfy the above requirements, then the entire finished flooring or carpet in that room must be replaced . . . and all such costs are Tenant's responsibility and expense." *Pinnacle Ex.* 5. In this case, the carpet removal had nothing to do with the Jacksons' use of, or failure to care for, the carpeting, and we find that Paragraph 15 of the Lease is inapplicable to the analysis.

[17]     In its order denying Pinnacle's motion to correct error, the small claims court found in pertinent part as follows:

> 1) The Defendant had a lease which required a monthly payment of rent and sewer charges in the amount of $996.00. The Defendants had rented the house from the Plaintiff since September 2013;
>
> 2) A severe flood took place at the leased premises on July 12, 2015, causing a large amount of flooding in the basement of the house.
>
> 3) As a result of the flooding the Defendants removed the carpeting from the basement. This was based upon the condition of the carpeting, the large amount of water that needed to be removed, and the instruction of the Leasing Agent that the carpeting should be removed;
>
> 4) Although the Plaintiff sought full replacement cost of the carpeting, the Plaintiff's only witness stated that the carpet was at least two years old. When asked by the Court if the carpet could be as old as ten years, he could not admit or deny due to his lack of knowledge. However, he did state that there had been two prior floods in the basement. The Defendant stated that the carpeting was very old and in bad shape.
>
> 5) The Defendant had paid the full July rent prior to the flooding which had made the basement unlivable. As of the date of the hearing, nothing had been done to repair the walls or to install new flooring.
>
> 6) The Defendants refused to pay rent in August based upon the rationale that under paragraph 9 of the lease, the property was 50% uninhabitable. Thus, the rent paid in July should be for 50%

of July rent and 50% of August rent.  The Defendants offered 50% of September rent, but the Plaintiff refused to accept the rent and would not respond to his attempts to communicate.

7) Despite repeated requests by the Defendants to have a leak in the bathroom of the rental premises repaired, the Plaintiff failed to respond, causing the Defendants to use self-help to capture the water each day.

8) The efforts made by the Defendants and the payments were reasonable and proportionate given the Plaintiff's failure to act timely.

*Appellant's Br*. 11-12.

[18] The evidence presented at the trial supports the small claims court's decision. James stated that when he could not get through to anyone at Pinnacle on the emergency maintenance line, he called the leasing agent, who, after speaking to McEwen, instructed the Jacksons to remove the carpet because it could not be salvaged and that to leave it in the home would damage the rest of house. James testified several times that he removed the carpet because he was told to do so.  We note that, contrary to Pinnacle's suggestion that the carpet was "completely removed" when Baker arrived, *Appellant's Br*. at 2, McEwen testified at trial that James "was starting to" remove the carpet by the time Baker arrived.  *Tr*. at 9.  Indeed, James's testimony was that the carpet was removed "Sunday or Monday."  *Id*. at 23.  James also testified that he received emails from McEwen after the flood, in which McEwen shared Pinnacle's communication with the home's owner about the flood, the carpet removal,

and plans to replace it. The small claims court's determination to not award damages to Pinnacle for the carpet removal reflected its determination that the Jacksons removed the carpet pursuant to Pinnacle's directive and did not owe Pinnacle for its replacement cost.

[19] With regard to the rent, James testified that after they got the carpet out and dried the floors, Pinnacle did not send anyone to the home to assess or dry the walls in the basement, nor did Pinnacle replace the carpet with any flooring. According to James, the Jacksons could not live in the lower level of the house after the flood due to its condition and that his family "moved everything" up from the basement and only had use of the upstairs of the residence. *Tr.* at 21. The Jacksons offered payment for half of September's rent, but Pinnacle refused it. The small claims court's decision reflected its determination that the Jacksons did not have use of the lower level of their home from at least July 12 to September 15, the date of the small claims trial, and accordingly, were entitled to a pro-rata reduction in their rent for the time in question. Pinnacle suggests on appeal that the Jacksons "were subjected to a flooded basement for only one or two days during which they did not have use of the basement," and thus, at most, the Jacksons may have been entitled to "to a one day abatement, but no more than a two day abatement of the monthly rental" pursuant to paragraph 9(D) of the Lease. *Appellant's Br.* at 5. This, however, is a request for us to reweigh the evidence and assess witness credibility, which we cannot do. Pinnacle has not met its burden to show that the small claims court's judgment was contrary to law.

Affirmed.

Riley, J., and Pyle, J., concur.